UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

THEODORE THORSEN, CHRISTINE M.
THORSEN, and DAVID M. THORSEN,
both INDIVIDUALLY and DERIVATIVELY
ON BEHALF OF SONS OF NORWAY, INC.,

                       Plaintiffs,

                  v.

SONS OF NORWAY, EIVIND HEIBERG,
DAN RUDE, and DAVID NESS,

                     Defendants.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CV-2572 (PKC)

PAMELA K. CHEN, United States District Judge:

      Before the Court are the motions of Defendants Eivind Heiberg, Dan Rude, and David

Ness[1] (the "Individual Defendants"), and Nominal-Defendant Sons of Norway, (collectively,

"Defendants") to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for

lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be

granted.  (Dkts. 43, 44.)  Plaintiffs Theodore Thorsen, Christine M. Thorsen, and David Thorsen

(collectively, the "Thorsens" or "Plaintiffs") were members of Derivative-Plaintiff Sons of

Norway ("SON") at all times relevant to the complaint. With respect to the Individual

Defendants, Eivind Heiberg is a current officer of SON, Dan Rude is a former officer of SON,

and David Ness is SON's general counsel.

---

[1] Although Defendant Ness has moved separately, the Court considers the Defendants' motions
in tandem.  (*See* Dkt. 44.)

The complaint in this action asserts five claims:

1) Count One: Breach of fiduciary duty against Heiberg, Rude, and Ness brought derivatively on SON's behalf;

2) Count Two: Defamation *per se* against SON brought by the Thorsens;

3) Count Three: Defamation against SON by the Thorsens;

4) Count Four: Intentional Infliction of Emotional Distress against SON by the Thorsens; and

5) Count Five: Intentional Infliction of Emotional Distress against SON by David Thorsen.

(Dkt. 1 at 45–46.)  Plaintiffs seek monetary damages and the appointment of a receiver over SON, among other relief.  (Dkt. 1 at 45–46.)

For the reasons set forth below, Defendants' motion is granted, and Plaintiffs' complaint is dismissed in its entirety with prejudice.

## BACKGROUND

The Thorsens are former members of the Nansen Lodge, located in Staten Island, New York, a local lodge of SON, an international fraternal organization.  (Dkt. 1 ¶¶ 18–19.)[2]  SON is a charitable 501(c)(8) organization incorporated in Minnesota, with approximately 61,000 members in approximately 400 lodges across the United States, Canada, and Norway.  (Dkt. 1 ¶¶ 12, 18.)  SON was established in 1895 for the purpose of promoting the interests of the Norwegian diaspora in North America and to protect the livelihoods of Norwegian immigrants and natives in the United States, Canada, and Norway.  (Dkt. 1 at ¶ 18.)

---

[2]  The facts set forth herein are from Plaintiffs' complaint.  For purposes of this motion, the Court accepts these facts as true.  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) (when deciding a 12(b)(6) motion for failure to state a claim, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party").

2

Defendants are David Ness, a resident of Minnesota and general counsel for SON, Eivind Heiberg, CEO of SON and a resident of Minnesota, and Dan Rude, a resident of Montana and the former International President of SON.  (Dkt. 1 ¶¶ 12–15.)

I.   The Complaint

In their complaint, Plaintiffs allege a litany of misdeeds by a so-called "cabal" of members at the Nansen Lodge, actions which allegedly have resulted in the degradation of the organization.  But the heart of Plaintiffs' complaint is that the members of the "cabal" within the Nansen Lodge, through their alleged financial mismanagement and negligence, have damaged the Nansen Lodge and SON by jeopardizing, but not causing the loss of, its charitable 501(c)(8) status.  (*See* Dkt. 1 ¶ 7) ("defendants have put the tax-exempt status of [SON] at risk of revocation by the [IRS]").  The complaint alleges that SON has been turned into "little more than a tax shelter" for the $500-million insurance business that SON operates.  (Dkt. 1 ¶¶ 1, 20.) Notably, the Individual Defendants are not alleged to be members of the "cabal" that committed the various misdeeds at the Nansen Lodge.  Rather, the Individual Defendants are alleged to have breached their fiduciary duties to SON as members of SON's international leadership, through their purported failed oversight and lax supervision of the Nansen Lodge.

Plaintiffs allege that the leadership "cabal" at the Nansen Lodge stymied reform and stifled dissent by ignoring the complaints of Plaintiffs and other members of the Nansen Lodge. (Dkt. 1 ¶ 41–59.)  Plaintiffs further allege that the Nansen Lodge leadership granted a for-profit caterer, A Taste of Honey, Inc., "a rather privileged position" "as the exclusive caterer and concessionaire" of the Nansen Lodge.  (Dkt. 1 ¶ 33.)  The complaint alleges that this decision, among others, placed the Nansen Lodge's financial status at risk by tying the financial viability of the Nansen Lodge to that of A Taste of Honey.  (Dkt. 1 ¶ 66.)

Plaintiffs' factual allegations as to the Individual Defendants relate almost exclusively to their roles as members of a special SON "Dispute Resolution Committee" (the "Committee") empaneled to investigate and adjudicate the Thorsens' complaints regarding the Nansen Lodge's leadership and members of the "cabal."  (Dkt. 1 ¶ 115.)  Plaintiffs also allege that the Individual Defendants were aware of the Nansen Lodge leadership's misdeeds but failed to intervene or provide proper oversight of the leadership group.  (Dkt. 1 ¶¶ 41, 135.)  According to the complaint, the Individual Defendants shirked their duties as members of the Committee by failing to adequately investigate and respond to the Thorsens' complaints.  (Dkt. 1 ¶ 115–22.)  Specifically, Plaintiffs complain that the Committee conducted its own investigation and ultimately hired an outside auditor that "did not perform the depth of review necessary to ensure that Nansen Lodge complied with all applicable laws and regulations" (Dkt. 1 ¶ 121) and did not adjudicate the Thorsens' claims of libel and slander.  (Dkt. 1 at ¶ 118.)

As for Plaintiffs' defamation claims against SON, Plaintiffs allege that SON defamed them by "adopt[ing] as fact the defamatory statements made by Nansen Lodge members" by way of "paying or causing a third-party to pay the bond claim filed by Nansen[.]"  (Dkt. 1 ¶ 146.)  The "bond claim" refers to a "reimbursement of legal fees that Nansen Lodge incurred during Brian Olsen and David Thorsen's leadership."  (Dkt. 1 ¶ 104.)  The complaint is unclear as to the precise circumstances of the bond claim, which apparently was made against the Nansen Lodge's directors' and officers' liability insurance program.  (Dkt. 1 ¶ 104.)  Nevertheless, Plaintiffs allege that by "paying the bond claim, [SON] adopted and ratified the statements and representations of the cabal that Brian Olsen and David Thorsen stole from Nansen Lodge when, in fact, they merely paid legal fees incurred by a firm hired by the Executive Board" and that

"[s]imply, by paying the claim, [SON] added its imprimatur to the slanderous statements; legitimatizing them despite their untruth."  (Dkt. 1 ¶ 106.)

Lastly, Plaintiffs allege that SON committed intentional infliction of emotional distress as to the Thorsens through its overall course of conduct.  (Dkt. 1 at ¶¶ 150–60.)

## II.   Proposed Additional Facts

Along with their opposition to the motion and in accordance with the Court's order of August 26, 2013, Plaintiffs include several additional factual allegations that would have been included in an amended complaint.  (Dkt. 48 at 4–7.)  The relevant proposed additional facts consist of the following:

1)  Heiberg and Ness arranged via email two teleconferences with David and Christine Thorsen regarding their complaints and the formation of the Committee.

2)  Heiberg, Ness, and Rude contacted non-party New Yorkers to investigate the Thorsens' complaints.

3)  Heiberg and Rude, outside of their roles as members of the Committee, corresponded with officers of the Nansen Lodge regarding the submission of insurance claims related to Thorsen's service as a leader of the Nansen Lodge.

(Dkt. 48 at 5.)  For purposes of this motion, the Court considers these additional allegations as if set forth in the complaint.

*DISCUSSION*

## I.   Personal Jurisdiction

The bulk of the parties' briefing concerns whether the Court has personal jurisdiction over the Individual Defendants.  The parties do not appear to dispute that the Court has personal jurisdiction over SON, which is a national fraternal organization with affiliates in New York. (Dkt. 1 ¶¶ 12, 18.)  Accordingly, the Court assumes it has jurisdiction over Derivative-Defendant

SON.[3]   The Individual Defendants, however, argue that this Court lacks both general and specific personal jurisdiction over them.  (Dkt. 44-1 at 6–13; Dkt. 43 at 6–12.)  The only claim against the Individual Defendants is Count One of the complaint, for breach of fiduciary duty, brought derivatively by Plaintiffs on behalf of SON.  (Dkt. 1 at 38–40.)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  Where, as here, no discovery has occurred, a plaintiff can withstand a motion to dismiss on the basis of legally sufficient factual allegations of jurisdiction in the complaint.  *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Personal jurisdiction of a non-domiciliary in a federal diversity case is determined by the law of the forum state in which the federal court is sitting.  *See Whitaker v. Am. Tel., Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *see also Robertson-Ceco Corp.*, 84 F.3d at 567 (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.")).  Accordingly, New York's long-arm jurisdiction statutes, New York Civil Practice Law and Rules ("CPLR") Sections 301 and 302, govern this question.

---

[3] In derivative actions, the corporation must be named as a necessary nominal defendant.  *See, e.g.*, *Meyer v. Fleming*, 327 U.S. 161, 167 (1946) ("The corporation is a necessary party.  Hence, it is joined as a defendant.  But it is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor.") (internal citation omitted).

a. <u>General Personal Jurisdiction</u>[4]

A federal court sitting in diversity has general personal jurisdiction over a party pursuant to CPLR § 301 where the defendant "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citation omitted). "The test for 'doing business' is a simple and pragmatic one . . . . The court must be able to say from the facts that the corporation is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 633 (S.D.N.Y. 2008) (citing *Landoll Resources Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33 (1990)) (internal citations and quotations omitted); *see also Grill v. Walt Disney Co.*, 683 F. Supp. 66, 68 (1988) (citing *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)) (under New York law, defendant must be "doing business" in the state "not occasionally or casually, but with a fair measure of permanence and continuity").

In evaluating whether a defendant is "doing business" in New York, courts look to a non-exclusive number of factors, none of which is conclusive, including: (1) "the existence of an office in New York"; (2) "the solicitation of business in the state"; (3) "the presence of bank accounts and other property in the state'; and (4) "the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985). Section 301 has been construed to confer jurisdiction over non-corporate entities, such as charities or nonprofit organizations and individuals, under the "doing business" test. *See*

---

[4] Plaintiffs do not argue that the Court has general personal jurisdiction over the Individual Defendants under CPLR § 301 (*see* Dkt. 48 at 8–12), and have therefore waived that argument. However, because Defendants have moved for dismissal on this basis, the Court nevertheless conducts a Section 301 jurisdictional analysis.

*Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 26 (S.D.N.Y. 1991) (citing *Diskin v. Starck*, 538 F. Supp. 877, 880 (E.D.N.Y. 1982)); *Laufer v. Ostrow*, 55 N.Y.2d 305, 309–10 (1982).

The Individual Defendants maintain that the Court lacks general personal jurisdiction over them because they are not "doing business" in New York and that Plaintiffs have not alleged sufficient facts to establish a continuous and systematic course of conduct with the state of New York.  (Dkt. 43 at 7–9.)  The Court agrees.

Here, Plaintiffs allege that the Individual Defendants, in their capacities as SON officers and agents, breached their fiduciary duty to SON.  However, individual officers, directors, and other agents of a corporation (or organization) are not automatically subject to a court's jurisdiction simply because the Court may have jurisdiction over the corporation (or organization).  *See Duravest*, 581 F. Supp. 2d at 634 (citing *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.*, 2005 WL 696897 (S.D.N.Y. Mar. 24, 2005) (itself citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470 (1988) ("[I]t does not follow automatically that New York may exercise personal jurisdiction over all of a corporation's officers as a consequence of having jurisdiction over the corporation.")).  Indeed, an individual acting on a corporation's behalf is not subject to general personal jurisdiction under Section 301.  *See Duravest*, 581 F. Supp. 2d at 635 ("Rather, an individual defendant may be subject to specific personal jurisdiction (*but not general jurisdiction*) based on his actions in his corporate capacity . . . .") (emphasis added); *Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.*, 2007 WL 747807, at *6 (S.D.N.Y. Mar. 9, 2007) (quoting *Laufer*, 55 N.Y.2d at 313) ("Although a corporation can act only through an employee or agent, the employee or agent being a live rather than a fictional being can act on behalf of himself or his employer or principal.  He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in

our State individually.").[5]   Therefore, Section 301 provides no basis for the assertion of general

personal jurisdiction over the Individual Defendants in their capacities as agents for SON.[6]

     b.   <u>Specific Personal Jurisdiction</u>

CPLR Section 302(a) confers personal jurisdiction where a person or his/her agent:

    1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or

    2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:

        (i)   Regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

        (ii)   Expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

    4.   owns, uses or possesses any real property situated within the state.

    i.   <u>CPLR § 302(a)(1)</u>

To establish specific personal jurisdiction under CPLR Section 302(a)(1), a plaintiff must

set forth facts showing that the non-domiciliary defendant (1) "transacts business within the

state" and (2) that the "cause of action aris[es] from" that transaction of business.   *Energy*

---

[5] There is some confusion among district courts as to whether Section 301 confers personal jurisdiction over individuals in addition to corporations.   As Defendant Ness points out, the district court in *Torres v. Monteli Travel, Inc.*, 2011 WL 2670259, at *5 n.3 (E.D.N.Y. July 7, 2011) assumed, without deciding, that individuals could be subject to personal jurisdiction under Section 301.   Nevertheless, the New York Court of Appeals spoke clearly on the issue in *Laufer*, and the Court follows that court's decision.

[6] Notably, Plaintiffs do not allege that the Individual Defendants were acting in their personal capacities, nor do they allege any facts to support such a claim.

*Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (S.D.N.Y. 2008) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The "transacting business" prong requires that a defendant have "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (citations omitted). The "arising out of" prong requires "a substantial nexus" between the transaction of business and plaintiff's claim. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). There is no set number of contacts that will confer jurisdiction, and even a single transaction sufficiently directed at or performed in New York can confer personal jurisdiction over a non-domiciliary defendant. *See Corporate Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union*, 265 A.D.2d 274 (1st Dep't 1999).

### 1. "Transacting Business"

"[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 51 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007)). "When a defendant engages in purposeful activity [in New York], personal jurisdiction is proper because [the defendant] has 'invok[ed] the benefits and protections of [New York] laws.'" *Ehrenfeld*, 9 N.Y.3d at 508 (citing *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 652 (1977)). "Although it is impossible to precisely fix those acts that constitute a transaction of business, our precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 9 N.Y. 3d 375, 380 (2007). Telephone calls and other

communications to New York, standing on their own, do not necessarily confer jurisdiction.  *See Carlson v. Cuevas*, 932 F. Supp. 76, 78, 79 (S.D.N.Y. 1996)).  Rather, the "nature and quality of the New York contacts must be examined to determine their significance."  *Kahn Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1125 (S.D.N.Y. 1997) (citing *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551, 553–54 (N.Y. 1997)).  Contacts by telephone or mail only provide a basis for asserting personal jurisdiction over non-resident defendants where the defendant, through those contacts, "projected himself" into New York in such a manner that he "purposefully availed himself of the privilege of conducting activities in New York and thereby invoked the benefits and protections of its laws[.]"  *Parke-Bernet Galleries v. Franklin*, 256 N.E.2d 506, 508–09 (N.Y. 1970) (citations and quotations omitted).  In-person visits, too, of course, are relevant to the analysis.  "Although a visit to the forum is a presumptively more significant contact than a phone call or a letter, it too must be 'purposeful' in order to sustain jurisdiction."  *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993).

Plaintiffs' allegations essentially are that Rude and Heiberg, residents of Montana and Minnesota, respectively, are subject to this Court's jurisdiction in New York for their alleged breaches of their fiduciary duties to SON, a Minnesota corporation, through their failure to properly supervise the Nansen Lodge, based in New York.  Plaintiff's proposed additional facts allege that, as part of the Committee's investigation, Rude and Heiberg contacted via email and telephone numerous New Yorkers, including the Thorsens themselves, third parties, and members of the Nansen Lodge.  (Dkt. 48 at 5).  The investigation concluded with the Committee delivering the findings of the investigation in person in New York, as the Individual Defendants

acknowledge.  (Dkt. 43 at 4–5; Dkt. 44-1 at 5.)  Rude and Heiberg again returned to New York to deliver the findings of the independent auditor the Committee had hired.  (Dkt. 43 at 5.)

Because there is no precise definition of what constitutes the transaction of business pursuant to CPLR 302(a)(1), New York decisions construing the transacting business prong of CPLR 302(a)(1) tend to focus on whether a defendant's conduct constitutes "purposeful[] avail[ment]" "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law."  *Best Van Lines*, 490 F.3d at 247 (citations omitted). Bearing this in mind, the Court finds that Rude and Heiberg's contacts with New York, although relatively limited, constitute the transaction of business for purposes of CPLR 302(a)(1).  *See Duravest*, 581 F. Supp. 2d at 635 (finding that individual defendant may be subject to specific personal jurisdiction based on actions taken in his corporate capacity).   Rude and Heiberg, in their capacities as SON representatives, projected themselves into New York, both physically and via electronic means, for the purpose of conducting activities pursuant to their roles on the Committee.  Rude and Heiberg participated in the investigation of the Thorsens' complaints and contacted via email and phone individuals in New York as part of that investigation.  (Dkt. 48 at 4–5.)  Rude and Heiberg, as members of the Committee, twice visited New York to deliver the findings of its investigation and the findings of the independent auditor.  Those activities related to SON's business activities in the state, namely, the investigation of the Thorsens' claims of malfeasance and mismanagement at the Nansen Lodge and their possible effect on the Nansen Lodge's, and thereby SON's, finances.  This conduct satisfies Section 302(a)(1)'s "transaction of business" requirement.

As to Ness, his role as outside counsel to SON and member of the Committee is somewhat different and therefore warrants additional consideration.  (Dkt. 44-1 at 3–4.)  Here,

Plaintiffs allege that Ness twice visited the Nansen Lodge, along with other members of the Committee, to report the Committee's and the auditor's findings.  (Dkt. 44-1 at 5.)  Plaintiffs also allege that Ness arranged via email, and participated in, conference calls with the Thorsens and other non-party New Yorkers regarding the investigation and the Committee's activities.  (Dkt. 48 at 4–5.)

Despite Ness's somewhat different relationship to the Committee, as outside counsel who billed SON for his time, the quality and nature of Ness's contacts with New York are similar to that of the other members of the Committee and are sufficient to confer specific personal jurisdiction over him.  Ness twice visited New York in his capacity as a member of the Committee.  (Dkt. 44-1 at 5.)  Ness also participated in several phone calls and email exchanges with the Thorsens concerning the Thorsens' complaints and to discuss the establishment of the Committee.  (Dkt. 48 at 5.)  Ness also contacted and conducted interviews with numerous individuals in New York.  (Dkt. 48 at 5.)  These contacts were made in Ness's capacity as a member of the Committee, which was charged with investigating the Thorsens' allegations on behalf of SON.  As with Rude and Heiberg, this conduct constitutes transacting business for purposes of CPLR 302(a)(1).

Accordingly, the "transacting business" prong of Section 302(a)(1) is satisfied with respect to the Individual Defendants.

c.   "Arising From" Prong

Jurisdiction under 302(a)(1) also requires that Plaintiffs' damages arise out of the business transacted in New York.  *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) ("Essential to the maintenance of a suit against a nondomiciliary under [CPLR 302(a)(1)] is the

existence of some articulable nexus between the business transacted and the cause of action sued upon."). The Second Circuit recently explicated the "arising from" prong of the inquiry:

> New York courts have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted." A connection that is "merely coincidental" is insufficient to support jurisdiction. This inquiry is a fact-specific one, and when the connection between the parties' activities in New York and the claim crosses the line from "substantially related" to "mere coincidence" is not always self-evident.

*Torres*, 2011 WL 2670259, at *8 (quoting *Sole Resort*, 450 F.3d at 103). Typically, "a cause of action 'arises from' a business transaction when 'a defendant . . . breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Id.* (citing *Beacon Enters. Inc. v. Menzies*, 715 F.2d 757, 764–65 (2d Cir. 1983)).[7]

Here, the Individual Defendants' contacts with New York bear the requisite "substantial nexus" to Plaintiffs' claims, notwithstanding, as discussed *infra*, the far-fetched nature of those claims. Construing the complaint in the light most favorable to Plaintiffs, it alleges that Defendants breached their fiduciary duties to SON, in part, by conducting a faulty investigation into the Thorsens' complaints regarding the Nansen lodge. As part of that allegedly faulty investigation, the Individual Defendants interviewed via telephone and other electronic means

---

[7] CPLR 302(a)(2) also applies to non-commercial torts, so long as the claim "arises from" the defendant's transaction of business in New York. *See Torres*, 2011 WL 2670259, at *8 ("CPLR 302(a)(1) may occasionally provide the basis for a tort claim but will most often [be] cited as the basis for a contract claim.") (citation omitted). In New York and Minnesota, breach of fiduciary duty is a common law tort. *See Vione v. Tewell*, 12 Misc. 3d 973, 978 (Sup. Ct. N.Y. Cnty. 2013) (citing *Rich v. N.Y. C. & H. R.R. Co.*, 87 N.Y. 382, 390 (1882)) ("Breach of fiduciary duty is a tort that arises from a violation of a relationship of trust and confidence, such as that of an agent to his principal or a lawyer to his client."); *McGrath v. MICO, Inc.*, 2012 WL 6097116, at *10 (Ct. App. Minn. Dec. 10, 2012) ("[D]amages for breach of fiduciary duty, a tort claim, extend to all proximate consequences of the breach.").

people in New York, communicated via email and letter with people in New York, and delivered the conclusions of the allegedly faulty investigation in person in New York.  (Dkt. 44 at 5.)  While Plaintiff's expansive breach of fiduciary duty claim goes beyond the investigation itself (*see* Dkt. 1), the allegations regarding the faulty investigation are inextricably intertwined with that claim.  Consequently, it cannot be said that the Individual Defendants' contacts with New York are "merely coincidental."  Indeed, their contacts with New York are closely interrelated with Plaintiffs' breach of fiduciary duty claims.

This is far from the typical commercial case in which an out-of-state defendant breaches a contract or commits a commercial tort against a plaintiff in the course of transacting arms-length business with a counter-party in the state.  *See Beacon Enters.*, 715 F.2d at 764–765 ("Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York.") (internal citations omitted).  However, under these unique circumstances, the Court finds the requisite "articulable nexus" between the cause of action and the Individual Defendants' conduct with New York.  *See McGowan*, 52 N.Y.2d at 272.  Although the connection between the Committee's investigation and the Individual Defendants' alleged breach of fiduciary duty is, in the Court's view, tenuous at best, the Committee's investigation, partially conducted in New York, is at the core of Plaintiffs' claims.

In sum, the Court finds that Plaintiffs have made the necessary showing at this stage of the case that the Individual Defendants' contacts with New York are of the quantity or quality necessary to establish specific personal jurisdiction under Section 302(a)(1).  *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ("Prior to the holding of an

15

evidentiary hearing, the plaintiff need only make a *prima facie* showing that jurisdiction exists."); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of [personal] jurisdiction through its own affidavits and supporting materials."). The Court, therefore, finds that it has jurisdiction over the Individual Defendants with respect to the sole claim against them for breach of fiduciary duty.[8]

    d. <u>Due Process</u>

For personal jurisdiction to lie, a Court's assertion of jurisdiction must comply with due process in addition to satisfying the requirements of New York's long-arm jurisdiction statute. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (finding that exercise of state long-arm jurisdiction did not offend due process). The due process requirement, as set forth in *International Shoe Company v. Washington*, 326 U.S. 310 (1945), "protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." *Robertson-Ceco Corp.*, 84 F.3d at 567. The due process test has two prongs: "minimum contacts" and "reasonableness." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

    i. <u>Minimum Contacts</u>

Generally, the minimum contacts inquiry overlaps significantly with the "transaction of business" inquiry under CPLR Section 302(a)(1). *See Best Van Lines*, 490 F.3d at 247 ("It may be that the meaning of 'transact[ing] business' for the purposes of section 302(a)(1) overlaps significantly with the constitutional 'minimum contacts' doctrine.") (citing New York cases).

---

[8]  In light of this finding, the Court need not resolve the issue of whether jurisdiction over the Individual Defendants exists under CPLR § 302(a)(2), (a)(3) or (a)(4). As previously discussed, all of the other claims in the complaint are against SON, over which the Court's jurisdiction is undisputed.

However, because New York's long-arm statute encompasses a wider range of activity than the minimum-contacts doctrine, the Court must undertake an additional analysis under the due process clause. *See id.* at 248 ("Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute.").

To establish the minimum contacts necessary to comport with the due process clause, the Court must determine that the defendant "purposefully availed" himself of the privilege of doing business in New York such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242–243 (2d Cir. 1999).

For substantially the same reasons as set forth above, the Individual Defendants have purposefully availed themselves of the privilege of conducting activities in New York.  As discussed, *supra*, the Individual Defendants projected themselves into New York by conducting the Committee's investigation regarding potential legal issues arising out of New York, contacting individuals in New York, and travelling to New York to deliver the Committee's findings.  Consequently, the Individual Defendants purposefully availed themselves of the laws and privileges of New York, and could have reasonably foreseen being "haled" into court in New York.  Accordingly, their conduct satisfies the minimum contacts prong of the due process analysis.

### ii.  Reasonableness

Even when a non-domiciliary defendant avails himself of the protections of the foreign forum, the Court must determine whether the exercise of personal jurisdiction over the defendant "is reasonable under the circumstances of the particular case." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).  Personal jurisdiction is reasonable

under the Due Process Clause when it does not "'offend traditional notions of fair play and substantial justice.'" *Chloe*, 616 F.3d at 173 (citing *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cali, Solano Cnty.*, 480 U.S. 102, 113 (1987)).  Five factors must be considered in determining whether exercising jurisdiction over a non-resident defendant is reasonable:

> [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.  [The Court] must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi*, 480 U.S. at 113.

Regarding the first factor, there necessarily will be some burden on the Individual Defendants should they have to travel to New York for trial.  Although this burden is substantially diminished in today's modern age, it remains an important factor.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129–30 (2d Cir. 2002) ("the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago").  The Individual Defendants, however, already are represented by local counsel here in New York, demonstrating their ability to, and the relative ease of, defending this action in New York.  In addition, the fact that the Individual Defendants traveled twice to New York in connection with the underlying events in this case further undercuts any claim of undue hardship or burden on these defendants.

As to the second factor, New York has an interest in adjudicating disputes arising in New York, and providing redress to its citizens.  Even though SON is a Minnesota corporation, SON oversees local lodges across the country, including in New York.  SON has multiple lodges in New York.  In addition, all of the Thorsens are residents of New York.

18

The third factor necessarily factors Plaintiffs, as they have an interest in obtaining relief here in New York, their home state and the home state of the Nansen Lodge, around which the complaint's allegations revolve.[9]

The fourth and fifth factors do not tip decidedly in either parties' favor.

Considering these factors, the Individual Defendants' "generalized complaints of inconvenience arising from having to defend [themselves] from suit in New York do not add up to 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Chloe*, 616 F.3d at 173 (citing *Robertson-Ceco Corp.*, 84 F.3d at 568) (itself citing *Burger King Corp.*, 471 U.S. at 477) (internal quotations omitted).  Consequently, the Court finds that asserting jurisdiction over the Individual Defendants comports with "traditional notions of fair play and substantial justice" and thus is reasonable under the Due Process Clause.

## II.  Plaintiff's Lack of Derivative Standing to Sue for Breach of Fiduciary Duty

Plaintiffs assert a derivative claim for breach of fiduciary duty on behalf of SON.  Under New York's choice of law rules, this Court, sitting in diversity, must look to the law of the state in which the subject corporation is incorporated for the substantive law of derivative standing. *See Schein v. Chasen*, 519 F.2d 453, 456–57 (2d Cir. 1975); *Diamond v. Oreamuno*, 24 N.Y.2d 494, 503–04 (1969) ("The primary source of the law [of corporations] ever remains that of the State which created the corporation.").  The precise contours of the demand requirement—a central component of derivative standing—also are defined by the law of the state of incorporation, Minnesota. *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1327 (2d Cir. 1991)

---

[9] In addition, Plaintiff Theodore Thorsen has alleged that he is physically disabled and thus unable to travel to another state to adjudicate this matter.  (Dkt. 48 at 6.)  Thorsen therefore alleges he would face a substantial burden were he to have to bring the case in Minnesota.

("Where a state claim is involved, therefore, the source of the demand requirement must be the law of the state of incorporation."); (Dkt. 1 ¶ 12.).

Although Plaintiffs' breach of fiduciary duty claim is based in state law, federal courts sitting in diversity apply federal procedural rules in addressing the sufficiency of a plaintiff's complaint on a motion to dismiss.  *See In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 507–508 (S.D.N.Y. 2008).  Federal Rule of Civil Procedure ("FRCP") 23.1 "is a pleading rule that 'creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question."  *Id.* (quoting *RCM*, 928 F.2d at 1330).  In connection with the demand requirement, FRCP 23.1 requires that a plaintiff asserting derivative claims state with particularity: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . ; (B) and the reasons for not obtaining the action or not making the effort."  FRCP 23.1(b)(3).  As set forth below, Plaintiffs have wholly failed to satisfy this pleading standard.

a.  <u>The Demand Requirement and Demand Futility</u>

In Minnesota, to have derivative standing to sue on behalf of a corporation of which the plaintiff is a member, the plaintiff first must make a demand upon the corporation's board of directors to sue on the corporation's behalf.  *See Winter v. Farmers Educ. Coop. Union of Am.*, 259 Minn. 257, 107 N.W.2d 226 (1961).  Plaintiffs concede that they did not make a demand upon the SON Board.  (Dkt. 1 ¶ 131.)  Under Minnesota law, a plaintiff's failure to make a demand to sue upon a corporation's board of directors is excused where the plaintiff establishes that such demand would be futile.  *Winter*, 107 N.W.2d at 234 (demand excused "where it is plain from the circumstances that it would be futile").  Under *Winter*, demand is not futile, and

should be made upon the board, "unless the wrongdoers constitute a majority of the board." *Id.* at 233.

Minnesota courts have not expressly adopted Delaware law regarding demand futility, and "a determination of demand futility under Minnesota law remains a mixed question of law and fact based on the particular circumstances of the case and in light of the principles enunciated in *Winter.*" *See In re Patterson Cos.*, 479 F. Supp. 2d 1014, 1038 (D. Minn. 2007). *Winter* remains the controlling law in Minnesota. *See Kococinski v. Collins*, 935 F. Supp. 2d 909, 917 (D. Minn. 2013) ("While Delaware law provides guidance, the Court must also adhere to the principles outlined by the Minnesota Supreme Court in *Winter.*"). Nevertheless, Minnesota courts have looked to Delaware courts for guidance in analyzing the demand requirement. *Id.* at 1038 ("Because shareholder derivative actions are not common in Minnesota, and the Minnesota Supreme Court has not revisited the standard governing futility since *Winter*, this court has looked to the demand futility analyses established by the Delaware courts for guidance.").

In a suit involving a violation of a board's oversight duties, such as alleged here, Delaware applies the *Rales* test. *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Under *Rales*, demand is deemed futile where a plaintiff adequately "alleges particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993). A director is deemed "interested" (*i.e.* not disinterested and not independent) where the director "faces a substantial likelihood of liability for various claims in the complaint." *Kococinski*, 935 F. Supp. 2d at 909.

As discussed, under FRCP 23.1 it is Plaintiffs' burden to allege particularized facts making it plausible that a majority of the SON Board was not disinterested or independent, or wrongdoers, therefore rendering demand futile and excusing Plaintiff's failure to make such a demand. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007); *Prof. Mgmt. Assocs., Inc. v. Coss*, 574 N.W.2d 107, 110 (Minn. Ct. App. 1998) (applying Delaware law and finding pre-suit demand excused if "the particularized factual allegations in the complaint" create a reasonable doubt that the directors were disinterested and independent); *see also Zupnick v. Goizueta*, 698 A.2d 384, 386 (Del. Ch. 1997) (noting that plaintiff bears the burden of alleging with particularity facts showing why demand should be excused as futile); FRCP 23.1(b).

Plaintiffs have failed to carry their burden.  The only allegation with respect to Plaintiffs' demand excuse is that "Because Mr. Heiberg is the CEO of [SON], any person to whom the Thorsens could make their demand would need Mr. Heiberg's consent before bringing suit.  It is unreasonable to think that Mr. Heiberg would consent to bringing a lawsuit against himself for breach of fiduciary duty." (Dkt. 1 ¶ 131.)  This is both inadequate and incorrect.

Plaintiffs have not set forth factual allegations making it plausible that a majority of the 12-person SON Board consisted of "wrongdoers," as required by *Winter*, or was not interested or independent, as required by *Rales*.  (*See* Dkt. 43 at 3; Dkt. 40 at 3.)  The demand excuse is inadequate on that basis alone.  Moreover, without alleging any facts regarding SON's board procedures, Plaintiffs allege that Mr. Heiberg, as Chief Executive Officer, effectively would have veto power over any board decision to sue.  That is not the proper inquiry, however.  The proper inquiry is whether a majority of the board are wrongdoers, *see Winter*, 259 Minn. at 267, or not

independent and disinterested, *see Rales*, 634 A.2d at 936–37. A CEO typically does not have veto power over a board decision, and Plaintiffs do not allege that Heiberg actually does here.

Plaintiffs' argument that demand upon the board would be futile because a majority of the board agreed with the Committee's assessment of Plaintiffs' complaints is equally without merit. (Dkt. 48 at 15.)[10] Merely because a majority of SON's board declined to internally adjudicate Plaintiffs' prior dispute with the Nansen Lodge leadership, due to what the board deemed to be an internal conflict of interest, does not mean that those board members are incapable of fairly addressing Plaintiffs' demand that the board initiate a lawsuit on SON's behalf against the Individual Defendants, for Plaintiffs' claims in this lawsuit. And Plaintiffs have set forth no authority or persuasive argument for the proposition that it does.

Moreover, Plaintiffs have failed to allege facts showing that any member of the SON board is "interested" for purposes of the demand analysis because the member "faces a substantial likelihood of liability for various claims in the complaint." *Kococinski*, 935 F. Supp. 2d at 909. Not only does the complaint not name the members of the board who may be interested, the complaint sets forth no allegations that a majority of the board's members face a substantial likelihood of liability in this lawsuit.

Accordingly, the complaint does not allege facts sufficient to make it plausible that demand would be futile, so as to excuse Plaintiffs' admitted failure to make a demand upon the SON board. Plaintiffs' derivative claim of breach of fiduciary duty against the Individual

---

[10] Notably, Plaintiffs did not set forth these facts in the complaint, but asserts these facts for the first time in their opposition.

Defendants, therefore, is dismissed based on Plaintiffs' lack of derivative standing to sue on SON's behalf.[11]

III.    Plaintiffs' Failure to State Claims of
        <u>Defamation and Intentional Infliction of Emotional Distress</u>

SON moves, pursuant to FRCP 12(b)(6), to dismiss Plaintiffs' individual claims against SON for defamation and intentional infliction of emotional distress.

        a.    <u>Rule 12(b)(6) Standard</u>

To survive a motion to dismiss pursuant to FRCP 12(b)(6), a complaint need only plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under the liberal notice pleading standards of Federal Rule of Civil Procedure 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*  In evaluating a 12(b)(6) motion to dismiss, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).

---

[11] Although not raised by Defendants, Plaintiffs (including SON) fundamentally lack standing to bring the breach of fiduciary duty claim because Plaintiffs have not alleged any facts to establish the three elements of constitutional standing:  (1) that Plaintiffs suffered an "injury in fact," *i.e.*, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) a causal connection between the injury and the conduct complained of; and (3) that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).  The only allegation of injury or damage with respect to Plaintiffs' breach of fiduciary duty claim is that the Individual Defendants "have put the tax-exempt status of [SON] at risk of revocation by the Internal Revenue Service, and placed entities organized by lodges to own real property out of compliance with state laws concerning nonprofit corporations."  (Dkt. 1 ¶ 7) (emphasis added).  This potential injury is far too speculative to satisfy the injury-in-fact requirement.  Plaintiffs have set forth no basis from which to conclude that the harm they allege is either actual or imminent.

24

Nevertheless, a complaint must be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

    a.  <u>Defamation</u>

Plaintiffs' complaint alleges both defamation and defamation *per se* in their individual capacities against SON. (Dkt. 1 at 40–43.) The parties do not address which state's law applies to Plaintiffs' defamation claims. Plaintiffs in their brief cite no case law regarding defamation (Dkt. 48 at 17), while Defendants cite New York law, (Dkt. 43 at 19–24.) It is not disputed that the Plaintiffs are residents of New York, the Nansen Lodge is located in New York, and the allegedly defamatory statements, had they been made, were directed at Plaintiffs while they were located in New York. Accordingly, the Court applies New York law to Plaintiffs' defamation claims. *See Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) (applying New York law to defamation claim where "the events around which the suit revolves occurred in New York").

The gravamen of an action alleging defamation is an injury to reputation. *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) ("Defamation is injury to a person's reputation, either by written expression (libel) or oral expression (slander)."). A defamatory statement is one that exposes an individual "'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 112 (2d Cir. 2005) (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) (itself quoting *Kimmerle v. N.Y. Evening Journal*, 262 N.Y. 99, 186 N.E. 217, 218 (1933))); *see also* Robert D. Sack, *Sack on Defamation* § 2.4.1 (3d ed. 2005).

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (citing *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (itself citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999))).

Although New York law sets a heightened pleading standard for defamation claims,[12] New York pleading requirements do not apply to a case in federal court. *See Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 671–72 (S.D.N.Y. 2007) (applying federal pleading requirements to defamation claims). Rather, under FRCP 8(a)(2)'s liberal notice pleading requirements, a plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."[13]

---

[12] To adequately plead a claim for defamation under New York law, the plaintiff must "identif[y] the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Fuji Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (citations omitted); *see also Arsenault v. Forquer*, 197 A.D.2d 554 (2d Dep't 1993) ("[T]he specifics of all three component parts of the publication, *i.e.*, its time, manner, and audience, must be alleged in order for a cause of action sounding in libel to succeed."); N.Y.C.P.L.R. § 3016(a).

[13] Only FRCP 9 requires a heightened pleading standard, and that rule does not apply to state law defamation claims. *See id.*; *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980); *Law Firm of Daniel P. Forster v. Turner Broadcasting Sys.*, 844 F.2d 955, 958 n.3 (2d Cir. 1988).

i.  Making of a False Statement

The Thorsens fail to adequately allege that SON made a false statement concerning them.[14]  The Thorsens allege that SON made a false statement by "paying or causing a third-party to pay the bond claim filed by the Nansen Lodge against the New Leaders[15] concerning the hiring and payment of Fox Rothschild, [SON] adopted as fact the defamatory statements made by Nansen Lodge Members."  (Dkt. 1 ¶ 146.)  Causing a bond claim to be paid manifestly does not constitute an oral or written *published statement*.  *See Salvatore v. Kumar*, 45 A.D.3d 560, 563 (2d Dep't 2007) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)) (requiring "a false *statement*, *published* without privilege or authorization to a third party" in a defamation claim) (emphasis added).  The Thorsens point to no authority for that expansive and novel proposition, because none exists.  Although a party may "adopt" a statement as its own by republishing a defamatory statement, causing a bond claim to be paid clearly is not the same as republishing a statement.  *See Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285 (S.D.N.Y. 2005) ("[O]ne who republishes a defamatory statement [originally made by another] 'adopts' it as his own and is liable in equal measure.") (citing *Sack on Defamation* § 7.1).  Plaintiffs have not alleged that SON republished an allegedly defamatory statement, nor have Plaintiffs identified a third party to whom SON published a statement.

---

[14] Plaintiffs' defamation claims are only against SON.  The Thorsens do not claim that any of the Individual Defendants made or adopted any false statement.  In their defamation claims, Plaintiffs allege that members of the so-called Nansen Lodge "cabal," namely "Paul Kornbrekke, Kenneth Gundersen, Richard Maren, Harry Kuell, and others at Nansen Lodge" made untrue statements, which they allege were implicitly "adopted" by SON through its payment of the bond claim.  (Dkt. 1 ¶¶ 141–42, 144.)

[15] The complaint defines the "New Leaders" as Brian Olsen, Plaintiff David Thorsen, and Christine Hansen.  (Dkt. 1 ¶ 91.)

Accordingly, Plaintiffs have failed to allege any actionable statement made by SON, and their defamation claims must be dismissed on that basis.

ii.  <u>Special Damages</u>

Plaintiffs also fail to allege special damages.  "Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'"  *Celle*, 209 F.3d at 179 (quoting *Matherson v. Marchello*, 100 A.D.2d 233, 235 (2d Dep't 1984)); *see Sack on Defamation*, § 2.8.7.1.  The nature of the special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses."  *Thai*, 726 F. Supp. 2d at 330 (citing *Celle*, 209 F.3d at 179).

With respect to their defamation claims, Plaintiffs allege only that "the Thorsens have suffered damages, including extreme emotional distress, loss of income, money damages and the dignitary harm of being charged with a breach of trust."  (Dkt. 1 ¶¶ 143, 148.)  This fails to adequately plead special damages.  A plaintiff must plead with sufficient particularity facts demonstrating an actual loss.  *Celle*, 209 F.3d at 179.  Plaintiffs' vague claims that they suffered "loss of income" and "money damages" are inadequate.  "[R]ound figures or a general allegation of a dollar amount . . . will not suffice."  *Thai*, 726 F. Supp. 2d at 330 (citing *Nunez v. A-T Fin. Info., Inc.*, 957 F. Sup. 438, 441 (S.D.N.Y. 1997)).  Plaintiffs fail even to allege such a "round figure[]" or "general . . . dollar amount."

Moreover, Plaintiffs do not plead facts that show a connection between the alleged statements and a pecuniary loss.  The sort of vague "dignitary harm" alleged by plaintiffs does not constitute special damages necessary to sustain a claim for defamation.  A mere "injury to reputation" does not constitute special damages, and Plaintiffs rather must plead a particular injury which "flow[ed] directly from the injury to reputation[.]"  *Celle*, 209 F.3d at 179.

28

Accordingly, Plaintiffs have failed to satisfy the special damages pleading requirement for a defamation claim.

      c.    <u>Defamation *Per Se*</u>

A plaintiff is excused from pleading special damages, however, in cases of defamation *per se*. In cases of defamation *per se*, "the law presumes that damages will result, and they need not be alleged or proven." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). Damages need not be proven where a plaintiff alleges statements: "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.'" *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011) (quoting *Liberman*, 80 N.Y.2d at 435) (citations omitted).

Plaintiffs have failed to adequately plead a claim of defamation *per se*. Although Plaintiffs do not specifically address their legal basis for the defamation *per se* claim in their complaint, opposition, or surreply to Defendants' motion, Plaintiffs appear to allege defamation *per se* on the basis that SON allegedly adopted statements accusing Plaintiffs of committing a serious crime, to wit, theft. Plaintiffs allege that SON "stated or represented" that Plaintiff David Thorsen "stole and/or misappropriated money from Nansen Lodge when he caused Nansen Lodge to pay attorneys." (Dkt. 1 ¶¶ 139, 140.) However, causing one to incur attorneys' fees plainly does not constitute a crime. Under New York law, "only statements alleging facts can properly be the subject of a defamation action." *600 West 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992). In other words, legal conclusions will not suffice. Plaintiffs' characterization that SON made allegations that David Thorsen "stole" or "misappropriated" money by causing the Nansen Lodge to incur legal fees is a legal conclusion (and a far-fetched one at that), for which Plaintiffs cite no authority. Nevertheless, as discussed *supra*, even if

Plaintiffs were excused from pleading special damages under a defamation *per se* theory, Plaintiffs still have failed to allege an actionable defamatory statement.  Accordingly, Plaintiffs have failed to allege facts constituting defamation *per se*, and Plaintiffs' defamation *per se* claim is dismissed.

d.   Intentional Infliction of Emotional Distress ("IIED")[16]

To maintain a claim for IIED under New York law, a plaintiff must prove "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). New York law sets a very high bar for conduct that is "extreme and outrageous."  *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society") (citations and quotation marks omitted).  In New York, the tort of IIED is "extremely disfavored."  *Hogan v. J.P. Morgan Chase Bank*, 05-CV-5342(JS), 2008 WL 4185875, at *4 (E.D.N.Y. Sept. 4, 2008).  The question of whether the conduct alleged by a plaintiff may rise, as a matter of law, to the level of "extreme and outrageous" conduct is a question left to the district court in the first instance.  *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (affirming dismissal of emotional distress claim, and holding that "[w]hether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance").

---

[16] Although Plaintiffs stated their intention to withdraw their IIED claims in their letter seeking leave to amend the complaint (Dkt. 28 at 2 n.2), because the claim has not formally been withdrawn, the Court addresses Plaintiffs' claim as set forth in the complaint.

### 1.    IIED as to All Thorsens

The allegations underpinning the Thorsens' IIED claim are that SON "engaged in extreme and outrageous conduct when it, among other things, railroaded the New Leaders, lied to the [Nansen] Lodge membership, negotiated and executed the malignant contracts, impeached David Thorsen and Brian Olsen, defamed the Thorsens, and prosecuted a false bond claim against David Thorsen and Brian Olsen."  (Dkt. 1 ¶ 151.)  The Court finds that this alleged course of conduct does not, as a matter of law, constitute the sort of "extreme and outrageous conduct" that is actionable under New York law.  Indeed, the allegations in the complaint, at most, describe an interpersonal conflict amongst members of a fraternal organization that escalated into allegations of wrongdoing by officers in the organization, which were investigated and found lacking in merit by an independent third party.  This conduct is hardly outrageous or indecent.

### 2.    IIED as to David Thorsen

Plaintiffs allege that SON committed IIED against David Thorsen individually when SON "paid, or caused a third-party to pay, the bond claim against David Thorsen, effectively finding as a fact that he stole or misappropriated Nansen Lodge funds, when [SON] did not undertake a proper investigation of the claims against Mr. Thorsen."  (Dkt. 1 ¶ 157.)  For the same reasons as stated above, this course of conduct is not actionable, as a matter of law, under New York's law of IIED.

### IV.    Denying Leave to Amend

Generally, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation

omitted); *see also* FRCP 15(a)(2) (leave to amend the complaint "shall be freely given when justice so requires").  An opportunity to amend is not required where the plaintiff already has amended the complaint.  *See, e.g.*, *Yang v. N.Y. City Trans. Auth.*, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff already had amended once).

Following service of Defendants' motion to dismiss, Plaintiffs requested leave to amend the complaint and an extension of the briefing schedule.  (Dkt. 28.)  In their request for leave to amend, Plaintiffs stated they "would like to file an amended complaint to address the[] alleged shortcomings in the pleadings" because they could "allege additional facts to support the Court's exercise of personal jurisdiction over the [I]ndividual Defendants[.]"  (Dkt. 28 at 3.)  With respect to Plaintiffs' defamation claims, Plaintiffs stated they would "allege with more specificity who made what specific defaming statements, when they were made, and to whom they were made" and would "clarify how and why Defendants are liable for damages caused by the defaming statements."  (Dkt. 28 at 3.)  Plaintiffs also stated they would "allege with greater specificity why it would have been futile for them to demand that the Board of Directors of Sons of Norway bring their own suit against the [I]ndividual [D]efendants for breach of fiduciary duty."  (Dkt. 28 at 3.)

The Court denied Plaintiffs' request, but permitted Plaintiffs to include in their opposition the facts that would have been included in the proposed amended complaint.  (*See* Aug. 26, 2013 Order.)  Pursuant to the Court's order, Plaintiffs included in the opposition to the present motion the proposed additional facts.  (Dkt. 48 at 4–7.)  As a consequence, Plaintiffs effectively have had the opportunity to re-plead.

As discussed above, those additional facts, in conjunction with the facts included in the original complaint, are inadequate.  Consequently, granting further leave to amend would be

futile.  "In determining whether the claim in a proposed amended complaint will be futile, 'the court must take the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.'"  *Doyle v. United Airlines Inc.*, 914 F. Supp. 2d 325, 333–34 (E.D.N.Y. 2012) (citing *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999)).  "'If this assessment results in the conclusion that the proposed amendment must fail as a matter of law, the amendment would be futile, and leave to amend is properly denied.'"  *Id.* (citing *Gallegos*, 189 F.R.D. at 258).

Here, the Court already has considered the facts from Plaintiff's proposed amended complaint and found them to be insufficient to sustain the claims set forth in the complaint. There is ample basis to find that additional opportunity to re-amend would be futile and that dismissal with prejudice is warranted.  *See Cuoco*, 222 F.3d at 112 (finding that granting leave to amend would be futile); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Accordingly, given that Plaintiffs already have set forth the additional facts they would have included in an amended complaint, which the Court finds inadequate, additional opportunity to amend would be futile, and the Court dismisses the complaint with prejudice.

*CONCLUSION*

For the reasons set forth above, Plaintiffs' complaint is dismissed in its entirety, with prejudice.   The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants and terminate this case.

SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: February 6, 2014
       Brooklyn, New York